# Exhibit G

Carla J.K. Bassler, Certified Public Accountant
801 West Fireweed Lane, Suite 202
Anchorage, Alaska 99503

## Expert Report of Carla J.K. Bassler, CPA: In the matter of United States v. Paul Stockler, 3:14-CR-00059-SLG

### Documents Reviewed

My review of documents has included but is not limited to: Mr. Stockler's 2004, 2005, and 2006 trading records from Brown Co. and E-Trade; the RAR prepared by the Internal Revenue Service for 2006-2009; a copy of the plea agreement; Mr. Goddard, CPA's declaration; and Mr. Stockler's correspondence with Mr. Goddard, CPA, Mr. Stockler's declaration, and applicable Internal Revenue Guidelines and Codes and Treasury Regulations.

### Issues Presented

The two issues presented are whether Mr. Stockler's day trading activity would qualify for the mark-to-market election under code section 475(f), and whether Mr. Stockler qualifies for relief pursuant to Treasury Reg. 301.9100-3.

It is my opinion:

(1) **Mr. Stockler's day trading activities qualified for the mark-to market election pursuant to code section 475(f)**

(2) **Mr. Stockler is entitled to relief for a late election under Treas. Reg. 301.9100-3.**

### Mr. Stockler's Day Trading Activities Qualified for the Mark-to Market Election Pursuant to Code Section 475(f)

Section 475(f) is a regulatory election that provides a certain subset of taxpayers who buy and sell securities – "securities traders" – an opportunity to elect "mark-to-market" treatment of

the gains and losses from their trading business activity. Mr. Stockler qualifies as a trader in securities pursuant to Section 475(f).

Traders are in the business of buying and selling securities in their own accounts. They do not need to maintain an inventory or have customers. In order to be considered a trader in securities, certain conditions must be met:

1. A profit is sought from the daily activity of trading securities; not from the investment of dividends, interest and appreciation of the securities.
2. The activity must be substantial; and
3. The trading must be conducted with continuity and regularity.

Facts I considered when determining Mr. Stockler's status as a trader were the amount of time dedicated to the activity, the typical holding period of securities, the frequency, and dollar amount of the trades during the period, and the ability to pursue the production of income.

Mr. Stockler's trading activity in 2004-2006 was substantial. He spent over 4-5 hours per day researching stocks, evaluating trades, buying and selling securities, and evaluating market changes. He arose by 5 am on days when the market was open and began the research, evaluation and trading process. Mr. Stockler conducted further market research and evaluation at the end of the day when the markets in the United States and Europe had closed and while the Asian markets were active.

Mr. Stockler frequently conducted multiple trades on a daily basis. In the year ending December 31, 2004, between purchases of securities and options, and sales of securities and options, Mr. Stockler completed 964 transactions averaging 3.8 trades per day. Mr. Stockler purchased $4,107,610 of securities and sold $3,928,494 of securities.

In the year ending December 31, 2005, between purchases of securities and options, and sales of securities and options, Mr. Stockler completed over 665 transactions averaging 2.6 trades per available trading days. Mr Stockler purchased $1,062,942 of securities and sold $1,006,815 of securities.

In the year ending December 31, 2006 between purchases of securities and options, and sales of securities and options, Mr. Stockler completed over 931 transactions averaging 3.71 trades per available trading day. Mr. Stockler purchased $20,041,085.67 of securities and sold $17,851,765.35 of securities.

The trading amounts in these years are substantial and indicate a high volume of securities and options being traded for an extended and continual period of time. Mr. Stockler's trading statements support his position that his trades were conducted with the frequency, continuity, and regularity indicative of a business.

This substantial trading activity, in contrast to holding securities for dividend and interest earnings, supports Mr. Stockler's position that his intent was to profit from the activity of trading by buying and selling securities and options daily, and not from an investment position of buying and holding stocks to receive investment income from dividends, interest and long term appreciation of securities.

## Mr. Stockler is entitled to relief for a late election under Treas. Reg. 301.9100-3.

Treas. Reg. § 301.9100 is an equitable provision that allows a taxpayer an extension of time to make an election. Treas. Reg. § 301.9100-3 provides for non-automatic extensions of time for regulatory elections. Mr. Stockler is eligible for an extension of time to make a 475(f) election for the 2005 and 2006 tax years pursuant to the relief provided by Treas. Reg. § 301.9100-3.

Mr. Stockler is eligible for relief to file an extension because: (1) as previously stated, he is a trader in securities pursuant to Section 475(f); (2) he acted reasonably and in good faith; and (3) granting of the relief will not prejudice the interests of the government.

### *Mr. Stockler Acted Reasonably and in Good Faith*

Mr. Stockler hired Mr. Goddard to serve as his CPA in filing his 2004 tax returns, in early 2005. Prior to November of 2013, Mr. Stockler had no knowledge of the existence of Section 475(f), the fact that he qualified as a securities trader, or that he could elect the mark-to-market accounting method for the treatment of funds relating to his securities trading activities.

Mr. Stockler provided Mr. Goddard with his trading statements for the years 2004 and 2005. These statements provide substantial support for Mr. Stockler's day trading activity. Mr. Stockler discussed his extensive trading activities with Mr. Goddard. According to Mr. Goddard's declaration, he did not discuss or advise Mr. Stockler about his right to make the mark-to-market election concerning his trading activities. Mr. Goddard failed to inform Mr. Stockler of his eligibility for the election, in 2005 or any other tax year, or even the existence of the election.

Schedule D of Mr. Stockler's 2005 tax return as prepared by Mr. Goddard lists Mr. Stockler's trading losses at $444,308. As a result of Mr. Goddard's failure to advise Mr. Stockler to make the mark-to-market trading election for the 2005 tax year, Mr. Stockler was only able to take the statutory $3,000 loss despite his substantial trading losses. Had Mr. Stockler been properly advised by his CPA, Mr. Goddard, to make the election for the 2005 tax year and beyond, Mr. Stockler would have received a substantial tax benefit in 2006, 2008, and 2009 tax totaling $886,058.

### *Due to the Existence of Unusual and Compelling Circumstances, the Interest of the Government Would Not be Prejudiced by Granting the Extension*

If Mr. Stockler had received competent advice from his tax qualified tax professional, Mr. Goddard, he would have filed the election pursuant to section 475(f) for his 2005 and future tax returns by April 15, 2005. Mr. Stockler then would have been able to treat his losses noted on his 2005 and 2006 schedule D forms as ordinary income in 2005 and 2006. While Mr. Stockler did continue trading in 2005 and 2006, beyond the deadline for the 475(f) election, he did not realize any new gains or losses from trading activities after 2006, and his trading activities ceased shortly after 2006. Mr. Stockler is only asking to make the election for the years during which he should have known of the existence of the election as a result of working with his CPA, Mr. Goddard. In addition, on Mr. Stockler's 2007, 2008 and 2009 Schedule D prepared by the government, there is no new short or long term capital gain or loss noted and the carry-over amounts in 2007-2009 are the same amounts noted from 2006.

The granting of the extension to file the election does not prejudice the government since the only fact that has changed since the due date for making the election was Mr. Stockler's discovery of the availability of the election in late 2013. Mr. Stockler has discontinued his business and is not applying hindsight in making the election to attempt to lower his income for the future.

### Conclusion

It is my expert opinion that Mr. Stockler is entitled to deduct all capital losses for 2006 and is entitled to unclaimed deductions for all capital losses for 2005 which carry forward to future years. Mr. Stockler is entitled to these additional deductions because he meets the requirements under the Internal Revenue Code to be considered a "trader" and is entitled to retroactive mark-to market treatment for tax years 2005 and 2006.

I have based my report on the information provided to me and reserve the right to update or supplement this report should additional information or clarification of the information be presented to me.

Date: March 9, 2015

Carla J.K. Bassler
Certified Public Accountant

8156132v1
3/10/2015 11:06 AM