UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA,           )
                                    )
            Plaintiff,              )
                                    )
        vs.                         )       CASE NO. 3:14-cr-00059-RRB
                                    )
PAUL D. STOCKLER,                   )
                                    )
            Defendant.              )
_____ )


TRANSCRIPT OF IMPOSITION OF SENTENCE
BEFORE THE HONORABLE RALPH R. BEISTLINE, DISTRICT JUDGE
Friday, April 15, 2016; 10:01 A.M.
Anchorage, Alaska

**FOR THE GOVERNMENT:**
    U.S. Department of Justice, Tax Division
    BY: KEVIN F. SWEENEY and KATHERINE L. WONG
    601 D Street NW, Room 7909
    Washington, D.C.  20004
    703-299-3999

**FOR THE DEFENDANT:**
    Kasowitz Benson Torres & Friedman
    BY:  MARCUS S. TOPEL and LYN R. AGRE
    101 California Street, Suite 2300
    San Francisco, California  94111

**COURT RECORDER:**
    Denali Elmore
    222 West 7th Avenue, #4
    Anchorage, Alaska  99513
    907-677-6123

_____

**R. JOY STANCEL, RMR-CRR**
Federal Official Realtime Reporter
222 West 7th Avenue, #4
Anchorage, Alaska  99513
Proceedings Recorded by Digital Recording
Transcript Produced by Computer

1              (Call to Order of the Court at 10:01:26 a.m.)

2              DEPUTY CLERK:  All rise.  His Honor, the Court, the

3    United States District Court for the District of Alaska is now

4    in session, the Honorable Ralph R. Beistline presiding.

5              Please be seated.

6              THE COURT:  All right.  Good morning, everybody.

7    Everybody ready?  Who's speaking for who?

8              MR. TOPEL:  I am speaking for Paul Stockler.  My name

9    is Mark Topel.

10             THE COURT:  Okay.

11             MR. TOPEL:  Good morning, Your Honor.

12             MR. SWEENEY:  And my name is Kevin Sweeney.  I'll be

13   speaking for the Government, Your Honor.

14             THE COURT:  Okay.  And everybody's ready to go; true?

15             MR. SWEENEY:  Yes, Your Honor.

16             THE COURT:  Okay.  Well, my notes reflect -- well,

17   we're on the record, United States of America versus Paul D.

18   Stockler.  It's Case Number 3-14-59.  My notes reflect that it

19   was June 26th of 2014 that defendant pled guilty to three

20   counts of wire -- of willful failure to file an income tax

21   return.  One was for the year 2006, the other the year 2008,

22   and the other the year 2009.  All are Class A misdemeanors.

23             Later, an evidentiary hearing was conducted by Judge

24   Gleason and she concluded that the tax loss was $886,058, and

25   that's reflected at Docket 39.

1          After this was all taken care of, a presentence

2   report was ordered.  The parties filed their respective

3   objections that were all addressed by the probation officer.

4   Defendants objected to the tax loss amount, but other than

5   that, none of the objections appear to impact the sentencing in

6   this matter.  And the tax loss amount is the law of the case at

7   this point.

8          So other than that, are there any other changes or

9   additions to the presentence report from the Government?

10          MR. SWEENEY:  None, Your Honor.

11          THE COURT:  From the Defendant?

12          MR. TOPEL:  No, Your Honor.

13          THE COURT:  Okay.  Probation officer is here.

14   Anything to add?

15          MS. HENSEL:  No, Your Honor.

16          THE COURT:  Okay.  The Court will accept the

17   presentence report and the factual statements that are

18   contained in it, having been established by preponderance of

19   reasonably reliable evidence.  It appears we have, by

20   preponderance of the evidence, the sentencing guideline range.

21   While the offense level is 17, the criminal history category is

22   I, so the range would be 24 to 30 months.  Each count carries a

23   maximum one year in prison.  So the statutory maximum today is

24   three years in prison.

25          I have studied all of the papers filed in this

matter.  I've studied the parties' memorandum.  I've studied

the presentence report.  I've looked just recently to the

amendment to the plea agreement, and I have studied the

numerous letters submitted on defendant's behalf.  So I have a

good understanding of the case.  I don't know how much you want

to repeat here this morning.  I've read it all many times.

Anything that I need to be aware of before we begin?

MR. TOPEL:  No, Your Honor, not from us.

MR. SWEENEY:  Not from us, Your Honor.

THE COURT:  Okay.  So what's the Government's

recommendation?

MR. SWEENEY:  Your Honor, the Government's

recommendation is a sentence of 24 months imprisonment,

restitution in the amount of $886,058, which was the amount

determined by Judge Gleason to be the tax loss, and a fine of

$10,000.

THE COURT:  Okay.  Anything to add?

MR. SWEENEY:  Should I take the podium or just speak

from here?

THE COURT:  You can speak wherever you're

comfortable.

MR. SWEENEY:  Okay.  Yeah, well, Your Honor,

obviously that's an advisory guideline sentence, but it's the

low end and we don't think there's any facts in this case that

justifies varying any lower than that.

1          THE COURT:  Okay.

2          MR. SWEENEY:  Now, Mr. Stockler submitted a written

3    statement to Probation as part of this case and to his credit,

4    he's admitted to what he did, and he's offered some

5    justification for, and mainly he blames some of that on a

6    divorce that he was going through and financial trouble that he

7    ran into in 2007 regarding a settlement.  And specifically,

8    when he admitted to what he did, he limited those years from

9    2006 to 2009, and that's because that was what was charged in

10   the case, but this case is actually much broader than that and

11   Mr. Stockler's conduct goes back much further.

12         He didn't file a timely tax return for 2000, 2001,

13   2002, 2003, and despite in his statements to Probation he said

14   he filed a timely return for 2004, in fact, he did not.  And in

15   those years, the Government hasn't found any evidence that he

16   was having financial troubles, and at least in the early part

17   of those years, it doesn't appear that, you know, he was

18   having -- or he was going through a divorce.

19         In fact, he's actually only filed one timely tax

20   return from years 2000 to 2011.  And he did so only after he

21   was told by an IRS collection officer that if he did not start

22   to file, that he could be criminally prosecuted, and after

23   that, there was a court order regarding his divorce settlement

24   that made him -- made sure that he filed tax returns.  And so

25   it wasn't something that he did on his own.  It's something

that his filing was provoked by events, other events that
happened, events where he had some reason to be concerned.

And for a lot of people, the IRS telling you you're
going to be criminally prosecuted would be enough to get you on
the straight and narrow, to get you on the path to filing. But
that wasn't the case for Mr. Stockler. One year he timely
filed, but the next year he went right back to his old ways,
didn't file another return until 2013. That date's significant
because at that point, he was already under criminal
investigation and he knew it. So once again, corrected the
behavior, not for a long time, but only in response to some
government action or the threat of government action.

His -- his tax problems aren't just limited to his
return. He also was failing to file and to pay his employment
taxes. Even in those circumstances, the IRS wasn't able to
collect the money (indiscernible). They had to file liens in
order to try to collect it.

And all the time that he's owed this money to the
IRS, he's been living a pretty lavish life-style. He drives
cars like Porsches and BMWs and Teslas. He spends his money
gambling, tens of thousands of dollars in casinos in Las Vegas,
and he's lost hundreds of thousands of dollars trading very
speculative options with the personal E*Trade account that he
has. And so it's not that Mr. Stockler couldn't afford to
file -- to pay his taxes, it's just simply that he didn't want

1  to.

2      And so I think what that tells us about Mr. Stockler

3  is he's not capable of changing things around on his own.  He

4  really needs some force to step in and force a change in views.

5  And the defense in this case has asked for a probationary

6  sentence.  Alternatively, they ask for home detention, and

7  that's simply not enough.  Mr. Stockler needs to go to a real

8  jail with real bars.  He needs to be placed in real handcuffs,

9  because I think that's the only way that we're going to send a

10 message to him about what he needs to go -- do going forward.

11      The other thing, Your Honor, is besides having to

12 deter Mr. Stockler, it's also important to send a message to

13 other people who, like Mr. Stockler once was, was considering

14 whether or not to actually comply with the tax obligations they

15 know they have.  And today is actually kind of a particularly

16 significant day.  It's April 15th.  Typically, that's known as

17 tax day.  It's actually not, in fact, tax day this year because

18 taxes aren't due until April 18th, which is Monday, but what

19 that means is right now, there's people all over the country

20 trying to figure out whether they're going to file their tax

21 returns and they're going to take note of the sentences that

22 judges are handing out for failure to file tax returns and

23 they're going to look at the sentence that you adjudge to

24 Mr. Stockler, and we think that it needs to be stiff enough for

25 people to not want to take that chance, to not take that

1    gamble, and to do what's right, because, one, it's the right

2    thing to do, but also because they know if they don't, there'll

3    be severe consequences.

4            Now, Mr. Stockler, like many defendants, provided the

5    Court with letters of support from colleagues and family

6    members.  Several of these letters describe him as a very

7    ethical attorney who has the utmost respect for the law, but

8    the evidence in this case in some respects paints a little bit

9    different picture, a picture of somebody who toes the line of

10   ethics in legal matters.

11           In addition to just the general lack of respect for

12   the IRS filing laws, Mr. Stockler has been interviewed and has

13   corresponded with IRS officials about paying the taxes, the

14   back taxes that he owes in the past, and in particular, he did

15   that in 2009 and 2010.  In 2010, he was asked to complete

16   what's called a Form 433-A.  And basically, the purpose of that

17   form is to identify assets for the IRS and income to the IRS

18   that would allow them to collect on back taxes, and that form

19   is signed under penalties of perjury.  And as an attorney,

20   Mr. Stockler's well aware of what that means.  And he filled

21   out the form.  He listed lots of assets and income, but he did

22   not list two retirement accounts that he had.  And he submitted

23   that document to the IRS, and this type of imprecision in a

24   document is important, I think shows that at least in some

25   instances, he has not had the respect for the laws that he

1   should.

2           Additionally, as you pointed out, there's a two-day

3   evidentiary hearing in this case back in March of 2015, and the

4   issue in that case was whether Mr. Stockler could deduct

5   trading losses or the extent of the trading losses he could

6   deduct for some trading that he did out of his personal E*Trade

7   account.  And during that hearing, Mr. Stockler testified that

8   some of the money in that account came from an entity called

9   Security Aviation, which was owned by an individual named Mark

10  Avery.  And then in a previous matter, in U.S. Bankruptcy

11  Court, he admitted that SAI also paid additional money into his

12  law firm's IOLTA account, which in some parts of the case, also

13  is used to pay him legal fees which he earned for representing

14  related individuals.  In total, Mr. Stockler received about

15  $8 million into his IOLTA account from SAR -- SAI.  And since

16  2006, Mr. Avery has been convicted of wire fraud for instances

17  related to his operation of SAR -- SAI.

18          And also in that 2006 bankruptcy court matter that we

19  previously talked about, Mr. Stockler told the Court about how

20  he once advised a client named Rob Kane that there wasn't a lot

21  of defenses to the crime of willful failure to file, and he

22  actually, in that case, assisted Mr. Kane in filing back tax

23  returns that he was late on and in paying those taxes, yet he

24  stands before you today convicted of doing exactly what he

25  advised his client not to do.  And for people to respect the

laws and the tax laws in particular, it's important that they

see that people are treated equally.  And so though

Mr. Stockler is an attorney, he has to play by the same rules

as everybody else.  And if he receives a lenient sentence,

maybe a sentence of probation or a sentence to home confinement

in lieu of incarceration, people may look at this case and say,

Mr. Stockler, as an officer of the Court, he got a break, a

break that maybe I wouldn't have gotten had I done the same

thing.

And so in this case, the advisory sentencing range

calls for a term of imprisonment of 24 months at the low end.

As I told you when we started, that's what we recommend in this

case.  We don't think it's more -- it's more severe than

necessary to accomplish all the sentencing purposes, but we ask

that any sentence in this case include a term of imprisonment,

in real prison with real bars and real handcuffs, because

that's what Mr. Stockler deserves and that's the only way we

believe that Mr. Stockler will get back onto the straight and

narrow.

Your Honor, also, we would ask that -- I'm not sure

that this was clear in the PSR, but we'd ask as a condition of

Mr. Stockler -- the condition of Mr. Stockler's supervised

release, that he be asked to timely file tax returns, including

the years 2006, 2008, and 2009 and to timely file and pay taxes

in the future.  I think in the PSR it talks about paying taxes

1  in the future.  We weren't so clear as to whether that meant he

2  had to go back and file the returns that he failed to file and

3  for which he's pled guilty to, and we'd ask that you order that

4  as a term of his supervised release.

5         THE COURT:  Number 1 says, "Defendant shall cooperate

6  with a reasonable request of the Internal Revenue officers and

7  in good faith, best efforts attempt to pay in full any

8  outstanding tax liability."  Doesn't that cover it?

9         MR. SWEENEY:  Sort of.  It doesn't -- it doesn't --

10 doesn't require that he file, but we think he should.  I think

11 inherent in that, it assumes he's going to file, but we'd just

12 ask that you make that clear and you specifically order it.

13        THE COURT:  Okay.

14        MR. SWEENEY:  That's all I have, Your Honor.  Thank

15 you.

16        THE COURT:  Thank you.  Okay, Counsel?

17        MR. TOPEL:  Thank you, Your Honor.  Good morning

18 again.  My name is Mark Topel.

19        THE COURT:  Yes, sir.

20        MR. TOPEL:  And I am speaking for Paul Stockler and I

21 speak for him proudly, and it goes without saying.  And I will

22 touch on some of the factual matters that Mr. Sweeney touched

23 on, because we certainly disagree with them, and we believe the

24 record clearly indicates the basis for that disagreement.

25        Paul Stockler is, first and foremost, a good and

decent man.  You have told us that you read the letters from
many of the prominent and highly respected attorneys in this
community and from many individuals who have lived in this
community who have worked with Paul, who have come to like him
and respect his ethics and his integrity and his honesty in
dealing with them.  And of particular note, I would point out
the letter that this Court has in the file from Cabot
Christianson, who was the attorney for the trustee in the
Security Aviation bankruptcy matter, wherein he says, and I
think I'm quoting him almost directly, that in all of his
dealings with Paul Stockler, he found him to be incredibly
honest, not to stretch the truth, not to exaggerate anything.

And as Your Honor knows from having recently sat in
the Avery case, that Paul was Mr. Kane's lawyer and did some
work for Security Aviation, and that the very matters that were
touched on briefly by Mr. Sweeney in his comments to the Court
were examined very, very deeply and carefully by
Mr. Christianson and Mr. Barstow during that time.  And I find
it particularly telling that here, now, some years later,
Mr. Christianson not only has attested to Paul Stockler's
honesty in that matter, but has used him as co-counsel and as
counsel after that matter in some cases that he and Mr. Barstow
had.

Letter after letter talks about how Paul Stockler,
who has never been in criminal trouble in his life prior to

this time, and has now freely admitted and quickly admitted his

failure to file and takes responsibility for his failure to

file, that he has spent the last 40 years building a reputation

based on public service, first for the District Attorney and

then assisting Senator Stevens, selected by Senator Stevens to

do work in Washington, and throughout this time -- and then in

private practice. And throughout this time, you have read from

doctors and lawyers that he has devoted considerable time to

pro bono work, both for positions that couldn't afford his --

to pay him, and for individuals. You heard from a current

clerk of this court for many years, a friend of Mr. Stockler

who has provided free legal services for her and then for her

daughter. You heard from numerous citizens in this, high and

low -- not particularly powerful, not particularly influential,

not well-known, who came to Paul and needed help and he didn't

hesitate to help them.

So what does this say to this Court about this man

now facing sentencing? I think more importantly, for this

moment, what does it say about what an appropriate sentence

would be? And I want to point out something that I thought was

really very, very telling, even though we are not going to be

discussing because we're going to be appealing Judge Gleason's

finding. We think that it's not correct, but with all due

respect, this was her finding and it is the law of the case, as

you point out. But she said, in reference to the matter that

1    Mr. Sweeney talked about of a Form 433-A given to an IRS agent,

2    which Mr. Sweeney said somehow shows that Paul was arguably

3    dishonest in not completing the form completely, this is what

4    the Court found, and I'm reading directly from her order, and

5    I'm reading at Paragraph 21.

6        "Mr. Stockler signed a Form 433-A disclosure

7    statement dated June 28th of 2010 in which he provided an

8    accounting of assets and liability under penalty of perjury.

9    The Court finds that Mr. Stockler was not precise in completing

10   the Form 433-A but did not intend to deceive the IRS about his

11   assets and liabilities."

12       This was a matter that was testified to in front of

13   Judge Gleason by Mr. Stockler under oath during our hearing.

14   And she made this finding after that hearing.  And that finding

15   is entirely consistent with the letter after letter after

16   letter after letter that has been provided here for

17   Mr. Stockler, attesting to his integrity and his honesty.

18       In sentencing Mr. Stockler, these are important,

19   because under the guidelines, downward departure, the very

20   first one that directs the Court to take into account the

21   defendant's character and his pattern of conduct.  Before you

22   isn't a criminal.  It is true that he did not file his returns.

23   He should have filed them.  I don't think that it's correct to

24   argue that because he previously had filed late returns that

25   somehow this indicates that he should get a serious or heavy

sentence here, nor do I think it's appropriate, and I've never

thought it's appropriate, the "send the message" argument that

the Government repeatedly made here. There's plenty of cases

where the Government had an opportunity to send a message to

the American people about how vigorously they prosecute crime,

wherein they have not, and it is quite a different thing where

you have a good and law-abiding citizen who has done tremendous

amounts for his community before you on three misdemeanors the

very first time. And the idea that he needs a taste of

handcuffs and bars is -- not in any manner, I think, should be

persuasive to you when you're judging the individual before

you, who unlike many people who have come before this Court and

other courts, is truly a good and decent man, a moral man, a

man who spends his life doing good for others. It would, I

think, be a distortion of any kind of equitable criminal

justice system for you to put him in prison.

       Having said that, we have recommended to you that a

period of home confinement would be appropriate because under

the regulations, he could continue to meet his obligations of

his very busy practice. And also be able to pay the taxes and

whatever restitution that you feel is appropriate. If his

practice is dismembered and put into shambles by the fact that

he can't be available to do the trials -- he's a trial lawyer,

as I'm sure you know -- then he's not going to be able to pay

back the taxes that he owes.

1    One thing that I want to assure the Court, that every

2  plan is in place after the sentencing is completed to start

3  filing returns.  As the Court, I'm sure, is aware, there is a

4  bar on resolving questions on the civil side of the IRS while

5  the criminal case is going on.  With your sentencing completed,

6  I believe that bar will be lifted and we will be able to file

7  the returns that are due and going forward into -- into the

8  future.  I suppose technically, that could be done at any time

9  now, but he has been advised -- and he's not a tax attorney and

10  he does not -- and he has never represented anybody in a tax

11  matter, civil, criminal, or administrative -- to file those

12  returns and if the Court would so order it.  And I believe that

13  the condition that the Probation Office put in was -- was an

14  order for that.  It will be done forthwith, and of course, the

15  Probation Department will know about it.

16    This is a very different, at least in my

17  experience -- and which unfortunately is more considerable than

18  I care to talk about at this point -- this is a unique case

19  with a unique man.  He's told you, he's told the Probation, and

20  he's prepared to tell you now when I complete my remarks of his

21  remorse and how he has been shamed in his community.  He feels

22  shamed, not as attested to in the letters.  Tim Petumenos, I

23  think, comments that -- about that in his letter.  He's shamed.

24    I mean, he was a proud and prominent member of this

25  community's legal community and felt that he was living a moral

1  life.  You know, it's a pattern that we do so where there are

2  people who take great care of other people and allow their own

3  personal affairs to fall into shambles, which he did, and he

4  has suffered.  He has suffered greatly, and I'm sure that

5  whatever sentence you construct here will cause him

6  additional -- additional pain.

7  You've seen a lot of people.  You've been a judge --

8  I've never appeared in front of you, but I know, I've looked

9  up, you've been a judge for a long time and I think it's fair

10  to say to you that you have not seen a defendant in a criminal

11  case with as many equities going for him and as much remorse as

12  he has during the time that you've been facing these very

13  difficult sentencings.  And so I ask you to express this in a

14  wise sentence, a sentence that allows him to continue serving

15  the community and maintaining his practice.  That could be done

16  by a period of probation coupled with home confinement, subject

17  to release to do his trials.  And I leave it to you.  It seems

18  to me that everything that needs to be said has been said, and

19  it's left to your judgment.  Thank you, sir.

20  THE COURT:  All right.  Thank you.

21  All right, Mr. Stockler, what do you have to say?

22  Wherever you're comfortable.  That's fine.

23  THE DEFENDANT:  I apologize that I appear before you,

24  I think for the first time, Your Honor, as a defendant and not

25  as an attorney.  I've been practicing law in Alaska since I was

1    24 years old.  I've tried cases in Fairbanks, both shortly

2    before you were on the bench in Fairbanks, during the time that

3    you were a judge in Fairbanks, but I never had the pleasure of

4    appearing before you.

5            I apologize to the United States of America,

6    Department of Treasury, the attorneys for the United States

7    that have been assigned to -- they've had to waste their time

8    chasing after me, to the Alaska Bar association, to all

9    lawyers, because I've really spent my entire adult life trying

10   to make a good name for lawyers and am embarrassed and

11   humiliated that I failed to file my federal income tax returns

12   for the years 2006 through 2009.  I accept that I am

13   responsible for that and I don't make any excuses.

14           By the time 2006 rolled around, I just got myself dug

15   in such a deep hole that I had no way to pay what I thought I

16   owed.  I didn't know anything about this trader status, which

17   certainly if I had been advised when my accountant was

18   preparing my 2004 and 2005 tax returns, I certainly would have

19   elected, because I wouldn't have had any tax liability, and I

20   was not told that.  And it must be a character flaw that I just

21   kept my head down and kept working on other people's cases and

22   failed to take care of my own problems.  And I accept that's my

23   fault and it's my character flaw.

24           I want to touch briefly on the statement about

25   employment tax.  There was a time I was behind in employment

taxes, but that was eight -- I think maybe eight years ago.  I haven't -- I haven't missed an employment tax payment in eight years.  We got caught up and got on the electronic filing system and those are filed automatically and that amount -- that amount, paying that, getting caught up, failing in that and paying that is one of the things that got me behind, because the penalties and interest, I had to pay that.

I am humiliated that such a small town, Anchorage is, Fairbanks is, I think I've tried a case in every city and wherever I've gone, I've tried to make myself available to people, and I think the letters reflect that.  If I'm at the gym and I'm running, I've got my headphones on, it's not uncommon for someone to tap me on the shoulder and say, "I need the name of a good divorce lawyer," you know, "Can I give you my phone number and can you call me?"  And for 30 years, I've done that.  And it's humiliating to be here.

It's not the example I wanted to set for my daughter. I've tried to teach her right from wrong and I am certainly wrong and I feel terrible that this is one of the examples I set for my daughter.

I don't ask for -- I'll leave sentencing up to you. I'll just tell you that I've punished myself much harder than any of you could imagine.  Being proud of what you've done for 30 years, being a proud member of society and having your case be on the front page of the ADN twice, probably today a third

time, it's humiliating, but I deserve it, because these are my failures.  So I will accept any sentence this Court imposes. Thank you.

THE COURT:  Okay.  Well, thank you very much.  As I said before, I've had an opportunity to study this file in detail and have done it more than once.  It's a little bit unique.  I've been a judge for 24-plus years and more often than not, I'm sentencing drug dealers or bank robbers or pedophiles, people that suffer from some form of chemical addiction or mental disorder.  You don't appear to have -- to fall into any of these categories, but you clearly have violated the law.

It's a dilemma for judges when dealing with good people who have done bad things, but this has been dragging on for a long time and I'm not sure that -- I'm not sure what you've done to make good the mistakes or to pay any of the uncontested amounts that you owe, which is of concern.  Much of your life has been committed to the rule of law, but you appear to be totally insensitive to your obligations as a taxpayer.

And this is not a one-time event.  I note the Government writes you have a long and troubling history with the IRS.  For the years spanning 2000 to 2011, you only filed one timely tax return and didn't seem to be moved by threatened civil or criminal action.  And then, of course, there was the unemployment tax issue.

But your attitude towards taxation and the nation's
tax laws, especially as schooled in the law as you are, is
just, frankly, difficult to understand.  It's almost mind
boggling to read this file and understand what the heck you
were thinking.  And I've read with interest these letters
written on your behalf by people, frankly, who I respect, but
who I disagree with, to some degree here.  And it's always been
interesting to me to see how people's perception of justice
differs based on who is being judged at the moment.  I mean, we
really tend to see justice differently if we're dealing with
our friends as opposed to people we have little contact with.
I'm urged all the time, be tough on criminals, but not if it's
my criminal.

I remember early on in my career getting a letter
from a person that said, "Judge, we want to make sure that as a
new judge here that you're tough on these people that come
before you."  And it was within that very year I got a letter
from that very same person whose son had been involved in, I
think it was, car theft, explaining to me that this was an
exception to the rule because he was really a good person.  And
I've run into that time and time again and I see it here
somewhat today.  Be lenient to our friends but make sure you're
tough on other criminals.

And so I looked at these letters.  One writer
suggests that incarceration is not necessary for deterrence or

to protect the public.  And your attorney has suggested that.
But I think deterrence is a large factor to consider.  If
everyone acted toward the IRS as you have, this country would
be greatly impacted.  Just think about it, if everybody
responded to our tax obligations the way you have for over a
decade, we'd be in bad shape.

          Another writer suggests that you might be a victim of
hubris, but are otherwise a good man.  So hubris, that's been
defined as, among other things, insolent disregard of moral
laws or restraints.  Something in your psyche allowed you to
ignore a major obligation while doing many, many other good
things at the same time, and it is mind boggling.  I don't
understand it.

          You've been described as one of the best trial
attorneys in Alaska, which I don't doubt, and as honest, and a
man of integrity.  But that just doesn't square with your
history of flaunting our tax laws.  I mean, no one likes to pay
taxes, but we are all obligated to do that.

          Another writer suggests that you are completely
unlikely to violate this law again.  But that presumes that
your thinking toward the IRS or your attitude toward the IRS is
logical and rational, and I just -- I look at your years of
disregard for tax laws and your refusal to work with the IRS in
good faith, and I'm not so clear that if allowed to do this
again, you would somehow find a way to do it, because history

1   is a good predictor of future conduct.  You've got a lot of

2   support now around you and it would be surprising that, in

3   light of all this, you would continue this pattern.  But your

4   history in this regard is terrible.

5          You've been described as generous, but not when it

6   comes to paying your fair share of the taxes, and that's what

7   we're here about.  Your good qualities are commendable, and I

8   think maybe that's why you were charged with only misdemeanors,

9   because in the back of everybody's mind, they'd like to see you

10  continue your practice of law, as I would, because I know your

11  good qualities.  But we're not here to address your good

12  qualities, solely.  They're not determinative of what your

13  sentence should be for this violation of the law.

14         Then of course there's -- many have written about

15  your commitment to your daughter.  But again, most of the

16  people we sentence, probably 80 percent, have family members

17  that are adversely impacted by their loved one's criminal

18  activity.

19         So let me -- I probably should also note, I sentence

20  tax criminals all the time.  I've done trials and they include

21  all walks of life.  The most recent person that I did trial

22  with and had to sentence was a North Slope worker, but there's

23  been doctors and dentists and chiropractors and teachers and

24  engineers.  All of them, for one reason or another, chose to

25  ignore the tax laws or to find some ways to illegally get

 1    around them.  And as you well know, there's no attorney

 2    exception to the tax laws.  It's a burden that we all carry.

 3          So let's look at the 3553 factors.  First of all,

 4    there's the nature and circumstances of the crimes.  They

 5    occurred over a significant period of time, after extensive

 6    opportunity for reflection, by one who clearly knew he was

 7    doing wrong and who clearly should have known better.  And who,

 8    as an officer of the court, should have set a better example

 9    for the community.  I think the circumstances can fairly be

10    described as egregious.

11          And then let's talk about deterrence.  I think that's

12    important.  We need to send a message that we must all pay our

13    fair share of taxes, regardless of who we are, regardless of

14    what our positive qualities are.  Those who are considering

15    violating our tax laws should be deterred, and that's a

16    legitimate factor to consider.

17          And respect for the law.  My goodness, the law has

18    been good to you and you've been good to the law, in many

19    respects, but it's another important factor to consider, for

20    none of us is above the law.

21          Now, the IRS has many programs to deal with

22    delinquencies, and frequently works with taxpayers to

23    compromise or accept installment payments, or -- of tax debts

24    and I know the IRS generally goes to great effort to resolve

25    these matters before criminal charges are filed.  But you, sir,

were reluctant to work with them in good faith. So punishment

has to be a factor that we consider as well.

And then protection of the public, that's a relevant

factor, for we're all members of this public, obligated as

citizens of the United States, to pay our fair share of taxes.

All these things, these 3553 factors, I've run

through my mind, and I'm fully aware of your positive

qualities. They are numerous and they are undeniable. You're

a good man who has contributed positively to the community and

who has extensive support among your colleagues. And I think

that does permit, to some degree, a variance from the guideline

sentence, but it does not justify a probationary sentence.

That would just be sending the wrong message entirely.

So I've looked at this carefully. Run it over in my

mind many, many times, what is fair to all involved, and after

considering it in detail, I think that a sentence of 14 months

is sufficient but not greater than necessary to satisfy the

sentencing goals. So I'm going to accept the parties' plea

agreement and then impose sentence accordingly, and let me make

it official.

Pursuant to the Sentencing Reform Act of 1984 and

considering the factors found in 18 U.S.C. 3553(a), it is the

judgment of the Court that the defendant, Paul D. Stockler, is

hereby committed to the custody of the Bureau of Prisons to be

imprisoned for a term of 14 months, consisting of eight months

on Count 1, two months on Count 2, and four months on Count 3, all counts to be served consecutively.

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of one year on all counts, to be served concurrently. Within 72 hours of release from the custody of the Bureau of Prisons, the defendant shall report in person to the Probation Office in the district to which the defendant is released. While on supervised release, the defendant shall not commit another federal, state, or local crime, shall not possess any illegal controlled substance and shall comply with the standard and special conditions that are included in the judgment issued by the Court.

The mandatory condition of supervised release set forth in 18 U.S.C. 3583(d) requiring the defendant to submit to drug testing is suspended because there appears to be a low risk of future substance abuse by the defendant.

The defendant shall pay restitution to the IRS in the amount of $886,058. The Court finds that a fine is appropriate under these circumstances, and orders a fine in the amount of $5,000. It is further ordered the defendant shall pay the United States a special assessment of $75, which shall be paid immediately to the Clerk of Court.

Now, we have a number of special conditions that I'm going to read into the record. Some will apply now, some might await conclusion of your appeal. Number one, the defendant

1    shall cooperate with a reasonable request of Internal Revenue

2    officers in good faith, best efforts, attempt to pay in full

3    any outstanding tax liability, including penalty and interest,

4    or enter into an installment payment plan with the Collection

5    Division of the Internal Revenue Service within 60 days from

6    the final assessment, first notice, and demand.  This would

7    include filing of any unfiled tax returns in the past.

8            Two, the defendant shall provide to the United States

9    Probation Office a copy of any written and approved agreement

10   with the IRS for the payment of any outstanding tax liability

11   within 10 days from the execution of such agreement.  If the

12   defendant entered into any such agreement, he shall make timely

13   payments and shall abide by the terms of such agreement during

14   his term of supervision.

15           Three, the defendant shall timely file accurate

16   future income tax returns as required by the law during the

17   probationary period unless an extension of time is granted by

18   the IRS, in which event the return shall be filed within the

19   period of the extension.

20           Four, defendant shall provide the probation officer

21   with access to any requested financial information, including

22   authorization to conduct credit checks, and shall obtain copies

23   of defendant's tax information and shall not incur any new

24   debts or apply for credit without prior approval of the

25   probation officer.

1    Five, the defendant shall pay tax loss in the amount

2    of $886,058 to the Clerk of Court for the remittance to the

3    Internal Revenue Service for the tax loss determined by the

4    Court for tax years 2006, 2008, and 2009.  Any unpaid amounts

5    of tax loss shall be paid during the period of supervision in

6    monthly installments, not less than 10 percent of defendant's

7    gross monthly income, or $25, whichever is higher.

8    Six, the defendant shall apply for the Alaska

9    Permanent Fund Dividend each year he is eligible and proceeds

10   shall be applied to the amount of restitution owed.

11   I've indicated the fine is appropriate.  We've got an

12   interesting situation, because everyone knows, I think -- maybe

13   you changed your mind -- that defendant anticipates an appeal.

14   MR. TOPEL:  That's correct, Your Honor.

15   THE COURT:  Okay.  My understanding of the plea

16   agreement provides the defendant would appeal the sentence,

17   therefore defendant -- let me advise you of your appeal rights.

18   You're advised that you may appeal your sentence on

19   any of the grounds mentioned in 18 U.S.C. 3742.  If you cannot

20   afford an appeal, you may ask to do so at public expense by

21   applying for leave to appeal in forma pauperis.  If you request

22   it, the Clerk of Court will prepare and file a notice of appeal

23   on your behalf.  If you wish to appeal, you must do so within

24   the 14-day time period allowed by Rule 4(b) of the Federal

25   Rules of Appellate Procedure.  Clear?

1          MR. TOPEL:  Clear.

2          THE COURT:  Okay.  So now what?

3          DEPUTY CLERK:  I have some questions.

4          MR. TOPEL:  Your Honor, I would ask that Mr. Stockler

5   be allowed to remain out on the same terms and conditions that

6   he has been on the underlying case.  I've spoken with the

7   Government about that and they have indicated to me that they

8   are in agreement with that.  I would ask that the sentence be

9   stayed until we can resolve the amount of taxes that may or may

10  not be actually owed as the trader issue is reviewed on appeal.

11         That, secondly, Mr. Stockler, during this period of

12  time, be allowed -- half of his practice is in California -- be

13  allowed to travel with notification to the Probation Office of

14  the dates of cases, and travel.

15         I think that's it.

16         THE COURT:  What's your response?

17         MR. SWEENEY:  We have no objection to self-surrender,

18  Your Honor, but we need -- I think I need to talk to my

19  supervisors about whether we would agree to stay the sentence.

20  We haven't talked about that before and I'm not sure that I

21  actually have --

22         THE COURT:  Let me think about this.  He's been

23  sentenced.  We believe that within the next 14 days he's going

24  to file notice of appeal.  Then the issue is, while on appeal,

25  is he a candidate for release pending resolution.  Is he a

flight risk?

MR. SWEENEY:  We don't believe he's a flight risk, Your Honor.

THE COURT:  Or a threat to the community?

MR. SWEENEY:  No, Your Honor.

THE COURT:  So I think the appellate court would tell me, because they have before, under those circumstances, you probably should let them -- let the appeal go and the person should remain on release on bail conditions.  That's what I've been told by the appellate court on prior occasions when I've remanded when there's no flight risk and there's no threat to the community.

MR. SWEENEY:  Sure.

THE COURT:  If I -- you know, I don't want to get reversed that quick.

MR. SWEENEY:  The Government's amenable to that, Your Honor.

THE COURT:  Okay, all right.  Anything else?  So basically, it appears that defendant is a good candidate for voluntary surrender.  Once the appeal is resolved, then he'll have to stay in contact with the marshals.  They'll notify him, I presume, where he's going to spend his time, and then he'll be required to surrender to that institution to serve out his sentence.  If he fails to appear, then of course he could be looking at much, much more time.

1          And providing defendant complies with his bail

2   conditions and the relevant provisions of the provisions of

3   supervised release, his surrender date can be stayed until a

4   resolution of the appeal.

5          MR. TOPEL:  Thank you, Your Honor.

6          THE COURT:  Okay?

7          DEPUTY CLERK:  Judge, I have some questions.

8          THE COURT:  Okay.  Your turn.

9          DEPUTY CLERK:  Interest on the fine and restitution,

10  waived or not waived?

11         THE COURT:  What's the Government's position on that?

12         MR. SWEENEY:  That would be waived, Your Honor.

13         THE COURT:  Okay.

14         DEPUTY CLERK:  And how do I apply the fine to the

15  three different counts?

16         THE COURT:  These are questions for you.  She's

17  looking at me, but they're for you.

18         MR. SWEENEY:  You could assess it all to Count 1.

19         THE COURT:  Okay.

20         DEPUTY CLERK:  Thank you.

21         THE COURT:  Any other questions, Denali?

22         DEPUTY CLERK:  No.  Thank you.

23         THE COURT:  Anything else from probation?  Yes.

24         MS. HENSEL:  Your Honor, I just want to clarify his

25  release conditions.  He has been unsupervised to date.  So his

conditions would need to be modified so that he is on pretrial

supervision. We would ask that he be required to report as

directed to us, generally telephonic.

THE COURT: Number one, Mr. Stockler, this applies to

you, you have to report to her as she indicates; okay? Number

one. Number two?

MS. HENSEL: To report any contact with law

enforcement.

THE COURT: If you get picked up for any legal

problems whatsoever, you have to tell your probation officer.

MS. HENSEL: Outside of his business, I just want to

clarify.

THE COURT: Not your business. Okay.

MS. HENSEL: And he notify us of travel outside of

Alaska, but he would need Court permission to travel

internationally.

THE COURT: Can't travel internationally without

Court permission and what -- and with regard to travel to

California, what is -- what's he supposed to do?

MS. HENSEL: To notify us when he's traveling there,

his arrangements.

THE COURT: Okay.

MS. HENSEL: And that's it.

THE COURT: Mr. Stockler, do you understand?

THE DEFENDANT: I do, Your Honor.

1          THE COURT:  Do you agree?

2          THE DEFENDANT:  I do.

3          THE COURT:  Will you do it?

4          THE DEFENDANT:  Yes, I will.

5          THE COURT:  Counsel --

6          DEPUTY CLERK:  I'm sorry, I wasn't hearing.

7          MR. TOPEL:  He will.

8          DEPUTY CLERK:  He was not near a microphone.

9          THE COURT:  Okay.  Pull the microphone closer.  You

10    understand the conditions?

11          THE DEFENDANT:  I do, Your Honor.

12          THE COURT:  Will you comply with them?

13          THE DEFENDANT:  I will, Your Honor.

14          THE COURT:  And this lady, this probation officer, is

15    who you've got to get friends with, because she's going to be

16    the one that directs your life, to some degree.

17          THE DEFENDANT:  I will do that right as soon as this

18    hearing concludes.

19          THE COURT:  Okay.  Anything else, counsel?

20          MR. TOPEL:  No, Your Honor.  Thank you.

21          THE COURT:  So we've sentenced, we've advised appeal

22    rights, we've taken up the issues what's going to occur between

23    now and resolution of the appeal.  I think we're done for now.

24    Thank you all very much.

25          DEPUTY CLERK:  All rise.  This matter is now

1    adjourned.  This court is adjourned, subject to call.

2            (Proceedings concluded at 10:50:29 a.m.)

3

4

5                          CERTIFICATE

6            I, R. Joy Stancel, Federal Official Realtime Court

7    Reporter in and for the United States District Court for the

8    District of Alaska, do hereby certify that the foregoing

9    transcript is a true and accurate transcript from the original

10   digital record in the above-entitled matter and that the

11   transcript page format is in conformance with the regulations

12   of the Judicial Conference of the United States.

13           Dated this 2nd day of June, 2016.

14
                                /s/ R. Joy Stancel
15           _____
                     R. JOY STANCEL, RMR-CRR
16           FEDERAL OFFICIAL COURT REPORTER

17

18

19

20

21

22

23

24

25